[Civ. No. 16022.   Second Dist., Div. One.   Mar. 29, 1948.]

B. C. SLAVIN, Respondent, v. FRANK ARGOOD et al., Appellants.

Burke Mathes for Appellants.

Joseph Stell and Alex D. Fred for Respondent.

WHITE, J.—Defendants, husband and wife, have appealed from a judgment against them, in an action tried before the court without a jury, for the balance due under the terms of a written agreement. In the agreement defendants are described as "First Party," plaintiff as "Third Party," Pacific Linen Supply Company, a corporation, as "Second Party," and Attorney George Appel, who acted as a trustee, as "Fourth Party." The agreement, so far as here pertinent, provided as follows:

"WHEREAS, Frank Argood, one of the First Parties, is indebted to said Third Party in the sum of Eight Thousand Seven Hundred Fifty-Seven and Ninety-eight/100 Dollars ($8,757.98), and agrees to repay the same, with interest thereon at the rate of five per cent (5) per annum, payable monthly, in the manner and at the times hereinafter mentioned, AND

"WHEREAS, Mina Argood, his wife, is cognizant of the terms and conditions hereof, hereby voluntarily executes this agreement as one of the First Parties; AND

"WHEREAS, the First Party did procure for said Second Party certain contracts for the laundering of linen and other articles of apparel for the Service Army Camps in the vicinity of Los Angeles, California, and said contracts have become, and are now, valuable property rights;

"Now, THEREFORE, in order to secure said Third Party the amount which is due him, the parties hereto agree as follows, to-wit:

"The said First Party does hereby set over, transfer and assign unto Fourth Party as Trustee for the Third Party, Three and one-half Per Cent (3½%) of the entire net proceeds of the Second Party, derived from all sources of income, and accruing to the First Party from certain contracts with the said Second Party. The First Party covenants and agrees that the said percentage of Three and one-half Per-cent (3½%) shall never be less than One Hundred Dollars ($100.00) per month, plus accrued interest to date of each

payment, and that all such payments shall be distributed to the Third Party by the Fourth Party . . . .

". . . In no event, however, shall the monthly payment hereunder be less than the sum of One Hundred Dollars ($100.00), plus accrued interest to date of each payment, and, should said Three and One-half per cent ($3\frac{1}{2}\%$) of said entire net proceeds be less than One Hundred Dollars ($100.00) in each month, plus accrued interest to date of each payment, said difference shall be made up by said *Second Party.* . . .

"It is further agreed that as security for the faithful performance of the terms and conditions of this agreement, said First Party will simultaneously, upon the execution of this agreement, deliver to said Fourth Party as said Trustee for said Third Party, a certificate of stock in said Second Party, evidencing Three and one-half ($3\frac{1}{2}$) shares; said certificate to be held by said Fourth Party during the life of this agreement and redelivered to said First Party only upon complete performance of the within agreement by the First and Second Parties hereto.

" . . .

"It is further agreed that the said First Party is a married man and that his emoluments hereunder are community property, and for said reason, his said wife has executed this agreement as a party hereto.

" . . . ."

In December, 1941, a little over two months after the execution of the agreement, an involuntary petition in bankruptcy was filed against Pacific Linen Supply Company, the "Second Party," and thereafter plaintiff filed his claim in bankruptcy for the amount due under the contract, or $8,757.98, no payments having been made under the contract either by defendants or the corporation. A dispute having arisen over the allowance of the claim, on May 15, 1944, plaintiff entered into a stipulation with the trustee in bankruptcy of the bankrupt corporation, whereby it was agreed that "An Order of this Court" (District Court of the United States for the Southern District of California) "may be made and entered into in the proceedings now pending before this Court . . . That the claim of said B. C. Slavin may be allowed as a general unsecured claim in the sum of $2144.00," and that said claimant "shall have no further rights or claims against said debtor or its estate . . . ." Plaintiff thereafter assigned his claim to Merritt Building Safe Deposit Company.

Thereafter a reorganization plan under section 10 of the federal Bankruptcy Act was approved by the United States District Court. On July 13, 1944, plaintiff brought the present action to recover the difference between the contract obligation and the sum of $2,144 allowed as a general unsecured claim in bankruptcy and realized by the sale of the claim to the Merritt Building Safe Deposit Company.

It further appears from the testimony of Mr. Appel, who acted as trustee and fourth party, and as attorney for Mr. Slavin, that ''there was considerable doubt . . . as to whether or not there was any consideration by the corporation for the execution of the guarantee. . . . The claim was opposed on the ground that there was no consideration. I attempted to sustain it on the ground the corporation had been Argood's alter ego, that he completely dominated it. The referee, the special master, held against the claim of Slavin and . . . , and the matter came up here before Judge Beaumont. . . . and when it appeared to me that Judge Beaumont was adverse to my contentions, I immediately sought to see whether I could compromise the claim in some way, so we . . . arrived at the figures whereby we got $2144 . . . and we entered into a stipulation which was approved and subsequently we assigned the claims to the Merritt Safe Deposit & Trust Company Building, only as against the guarantor, the Pacific Linen Supply Company, it was an allowed claim in that sum only as against the Pacific Linen Supply Company, and since there was no money to speak of in the bankruptcy estate, and we wanted the cash, Mr. Robeson, of the Merritt Company, agreed to pay us the cash, whereas the other creditors were receiving theirs in installments, . . . .''

As grounds for reversal it is urged that the contract in question constituted a mortgage; that the mortgagee may not release the mortgage and retain the right to sue the mortgagor on the debt; and further, that the findings of fact do not support the judgment for the reason that no finding was made that the $3\frac{1}{2}$ per cent of the ''net proceeds'' of Pacific Linen Supply Company was valueless, and the findings ''fail to show that the securities had become valueless at the time the action was brought.''

The contract discloses not a chattel mortgage, but rather a pledge of a chose in action, together with an undertaking by Pacific Linen Supply Company that the monthly payments from the ''net proceeds'' should amount to at least $100 plus accrued interest. But in any event, if the security

was valueless plaintiff was entitled to proceed against the debtor directly.

As to the contention that no finding was made as to the worth of the 3½ per cent of the "net proceeds" or that the securities had become worthless at the time the action was brought, it appears that the court made a finding of fact as follows: "It is also true that the stock certificates referred to in the agreement of September 17, 1941, became worthless as a result of the bankruptcy proceedings of Pacific Linen Supply Co., *and made it impossible for plaintiff herein to receive any compensation in the manner provided by said agreement of September 17, 1941.*" (Emphasis added.)

Furthermore, the parties entered into a stipulation of facts whereby they agreed that "the facts alleged in Paragraph 7 of the complaint are true." Paragraph 7 of the complaint alleged in part: "That all securities mentioned in the aforesaid agreement as well as all securities given in accordance with the terms of the said agreement have become and are now valueless by virtue of bankruptcy proceedings. . . . "

. The court further found against defendants as to the allegation in their second affirmative defense that the agreement of compromise whereby plaintiff's claim was allowed as a general claim for $2,144 was entered into "without the knowledge or consent of the defendants."

■ Appellants' position appears to be that the respondent by compromising his claim against the corporation released the principal debtor from further liability. This contention is without foundation under the facts presented in the case at bar. The contract here was one of pledge of a chose in action, coupled with a guaranty. The corporate guarantor was adjudicated a bankrupt and the trustee in bankruptcy disputed the claim, whereupon the pledgee entered into a compromise. The claim that this compromise was made without the appellant's knowledge is negatived by the findings. Moreover, appellants did not in their answer charge that the compromise was not entered into in good faith, or that the corporation was not actually bankrupt, or that a better settlement might have been procured. While the nature of the "net proceeds" is not clear, they are referred to in appellants' brief as "future commissions" due Frank Argood, and in this connection, it should be noted that the court found that the defendant Frank Argood resigned as an employee of the corporation within one month after the execution of

the agreement whereby he assigned to plaintiff 3½ per cent of the "net proceeds" due him.

Beyond stipulating as to certain facts, the defendants offered no evidence. They do not upon this appeal contend that the findings made are not supported by the evidence. It must be held, therefore, that whatever security plaintiff held for his debt became worthless prior to the commencement of his action, which was initiated some two and one-half years after the adjudication in bankruptcy and shortly after the compromise was entered into.

█ It was error to enter judgment against the wife, Mina Argood, personally, upon the agreement under consideration. Nowhere in the agreement do we find a promise on the part of the wife to pay money, nor an acknowledgment of a preexisting debt owing from her. The document recites that the wife executes the agreement "as one of the First Parties," but contains no promise or acknowledgment by "First Party" to pay a debt. The preexisting debt is referred to as a debt of Frank Argood, the husband, only. From such evidence as was received, it appears that the intention of the parties was to bind the wife so far as her community interest was concerned in the "emoluments" due her husband from the corporation and which he assigned as security for his personal debt. The language of the contract, "that the said First Party is a married man and that his emoluments hereunder are community property, *and for said reason,* his said wife has executed this agreement as a party hereto," reinforces our conclusion in this regard. It follows that as to defendant Mina Argood the judgment should be reversed with directions to enter judgment that plaintiff take nothing as against her.

The judgment against Frank Argood is affirmed. As to defendant Mina Argood the judgment is reversed, with directions to enter judgment that plaintiff take nothing as against her.

York, P. J., and Doran, J., concurred.